368 So.2d 661 (1979)
FLORIDA STATE BOARD OF EDUCATION and Ralph D. Turlington, As Commissioner of Education of the State of Florida, Appellants,
v.
John F. BRADY and John G. Brady, Appellees and Cross-Appellants.
No. KK-378.
District Court of Appeal of Florida, First District.
March 20, 1979.
James D. Little and Judith A. Brechner, Tallahassee, for appellants.
Jack McLean, Ralph Armstead and Anna Bryant Motter, Tallahassee, for appellees and cross-appellants.
MELVIN, Judge.
The appellants have timely brought for review their challenge to that portion of the final order of date June 15, 1978, entered by the hearing officer of the Division of Administrative Hearings wherein it was held and determined:
"3. The scoring criterion is a rule within the meaning of the APA, F.S. § 120.52(14).
4. The scoring criterion by which mastery of the basic skills and satisfactory *662 performance in functional literacy are determined is invalid for its failure to have been promulgated in accordance with the APA, specifically F.S. § 120.54."
The order found and determined that Rule 6A-1.941, as promulgated by the State Board of Education, was a valid rule within the contemplation of Florida Statutes, Chapter 120, the Administrative Procedure Act. The sole question presented for determination here is whether or not, during the time here pertinent, the scoring criterion by which knowledge of the basic skills and satisfactory performance in functional literacy was measured was a rule within the contemplation of Chapter 120. It is stipulated that the scoring criterion referred to was not adopted as a rule pursuant to Chapter 120, but was set and determined by Ralph D. Turlington, as Commissioner of Education of the State of Florida, pursuant to Section 229.57(2)(b), Florida Statutes (1977).
John F. Brady, father of an 11th grade student, John G. Brady, brought this action. At the conclusion of the hearing, a motion was granted to add John G. Brady as a party to the cause. The basis for the Brady complaint was that John G. Brady had passed the functional literacy test but had failed two parts of the basic skills test, relating to apostrophe and noun capitalization. The local school board, pursuant to its obligation, provided young Brady with extra study in the areas in which he reflected deficiency in the test. The sole basis of the Brady complaint was that the scoring standard as determined by the Commissioner of Education of Florida is not valid because such criterion was not a part of the rule referred to nor was it adopted as a separate rule under Chapter 120. With this contention, we do not agree.
The test and the scoring was evenly applied to all students in Florida at grade levels 3, 5, 8 and 11. Young Brady did not have a right to be free from testing. While it is true that a student has a "substantial interest" in passing the various subjects in the various grades through which he progresses towards graduation, he does not have a right to pass any subject as to which he had not obtained the required proficiency. A high school diploma stands for something more than testimony to the fact that a student has attended that school for a given number of years. In order for those in the academic field to know that a student has obtained proficiency in any given subject, it would follow as a matter of logic that there would have to be, and traditionally there always have been, tests given to the students on the subjects on which they have received instruction.
Whether a student will be considered as having obtained proficiency in any subject is a matter peculiar to the field of education and is not one, in our view, that was intended by the legislature to be arrived at through promulgation of rules under the Administrative Procedure Act. It is our view that the Legislature of Florida had this very subject under consideration when it adopted Section 229.57(2)(b), Florida Statutes (1977), wherein the Commissioner of Education was required and directed to:
"Develop and administer in the public schools a uniform, statewide program of assessment to determine, periodically, educational status and progress and the degree of achievement of approved minimum performance standards. ..."[1] (Emphasis supplied)
Implicit in such direction to the Commissioner of Education is the granting to him of the authority to determine scoring criteria. We further note that no adverse effect has been visited upon young Brady because, following a testing procedure, he was required to gain a minimum knowledge with reference to the use of the apostrophe and the proper capitalization of nouns. According to the record, young Brady at the time of the hearing was in the 11th grade and had before him the 12th grade courses to pass before any determination could be *663 made with reference to his entitlement to graduation. Graduation for him, as it is for all other students, will depend also upon his passing his 12th grade courses. There is no testimony to the effect that his graduation is in any way in peril by reason of his having first failed to demonstrate the required knowledge and later having gained the required knowledge of the apostrophe and capitalization of proper nouns. He should appreciate rather than complain about the educational system in Florida that obviously has been of benefit to him.
Of interest in the consideration of this area of school law is Board of Curators, Univ. of Mo. v. Horowitz, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978). In Horowitz, the Supreme Court of the United States considered the dismissal of a senior in a state medical school because of her failure to meet academic standards. The court considered the case utilizing the concept of liberty and property under the Fourteenth Amendment and examined the degree of due process that is required in academic dismissal matters. We perceive the reasoning employed by the court in disposing of the case to be of value in the area of school law. First, the court distinguished academic discipline from misconduct disciplinary proceedings and then observed that:
"Academic evaluations of a student, in contrast to disciplinary determinations, bear little resemblance to judicial and administrative fact-finding proceedings to which we have traditionally attached a full hearing requirement. * * * Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making.
Under such circumstances, we decline to ignore the historic judgment of educators and thereby formalize the academic dismissal process by requiring a hearing. The educational process is not by nature adversarial; instead it centers around a continuing relationship between faculty and students, ..." (Emphasis supplied)
If one who is a senior in medical school may be dismissed for academic reasons (which necessarily were predicated upon testing) and such dismissal might be accomplished without the necessity of any hearing, we find the requirement that an 11th grade student submit to an evenly administered test to determine his knowledge of grammar, reading, arithmetic, and writing, and then furnished an opportunity to correct such deficiencies as may thus be revealed, is a proper exercise of the authority granted to the Commissioner of Education of the State of Florida by the provisions of Section 229.57(2)(b).
We do not have here a case of discrimination in which the test required of one student was not required of all others. We do not have a situation where one's test papers were graded any differently than all the other students in the State of Florida similarly situated.
We hold that the scoring criterion complained of was a valid exercise of the authority granting by the Legislature to the Commissioner of Education of the State of Florida and that Rule 6A-1.941, Florida Administrative Code, is a valid rule. It follows that the order of the hearing officer of date June 15, 1978, the subject of this opinion, should be and is vacated and set aside to the extent it is not consistent with the views herein expressed.
MILLS, Acting C.J., and MASON, ERNEST E., Associate Judge, concur.
NOTES
[1] Authority is now vested in State Board of Education. See Chapter 78-424 which was filed in the Office of Secretary of State June 27, 1978, and was effective upon becoming a law.